## S. D. WILLIAMS *vs*. THE STEAMSHIP COLUMBIA.

Memorandum of a receiving agent of a ship, signed, and showing the receipt of the goods for shipment and delivery, will be considered a bill of lading.

A wharfinger to whom the ship delivers goods, with instructions not to pass them to the consignee till the payment of freightage, is the agent of the ship.

The consignee is entitled to a reasonable and suitable time and opportunity for the examination of a consignment, before receiving it, but if having received the consignment, he discovers it to have been damaged in transit it is his duty to give notice, and proceed otherwise according to the rules of commercial usage, in ascertaining the extent of the injury.

While his failure in this respect will not preclude him from recovering damages, he should be held to strict proof; and should not be permitted to amend his libel to include damages discovered after the institution of suit, that by diligence might have been discovered before.

No evidence in this case to establish a custom of delivery of goods at the port of Olympia.

APPEAL from the Second Judicial District, holding terms at Olympia.

Opinion by McFADDEN, Chief Justice.

This cause comes before us on appeal from the decree of the District Court for the Second Judicial District, sitting in admiralty.

The libellants claim to recover damages on contract of affreightment. It appears from the libel, that early in February, 1858, the libellants, who were engaged in merchandising in Olympia, in this Territory, shipped, in San Francisco, on board the Pacific Mail Steamship Company's steamer *Columbia*, a quantity of merchandise to be delivered at the port of Olympia. The said merchandise, it is claimed, was delivered for shipment in good order and condition, but that in the transit, from negligence and want of proper attention in the stowage, as well as

want of proper care and attention as to time and manner of delivery, was received in a damaged condition.

No bills of lading were taken, but memoranda of the receiving agents, Nolan & McMahin, signed by them, dated, and showing the number of packages, and that the same were to be delivered at Olympia. Some of them specifying Olympia or Brown's wharf, have been presented and treated as bills of lading, on the principle that the written acknowledgment of the reception on board, of a particular quantity or parcel of goods in a particular vessel, to be carried to a particular place, is a bill of lading, Benedict's Admiralty, page 162. The goods were landed at Brown's wharf, and there delivered to Mr. French, one of the owners, and in charge of the said wharf and the warehouse thereon, and notice was given to the consignees.

The respondents claim that the goods were delivered at Brown's wharf in the same order and condition as when shipped. That they were all delivered, and that there was no damage for which they were liable.

We have inspected the memoranda and notes of Nolan & McMahin, the agents who received the goods at the ship's side, and receipted for the same, as also the testimony in support of the seven propositions involved in the issue.

Freight was demanded on the arrival of the goods at Brown's wharf. The goods were taken from the warehouse on the wharf by G. W. French, who had charge thereof, and by him brought up to Olympia in a boat, and delivered to the consignees. The clerk in the store of the consignees, on discovering, as is alleged, that the several packages of goods were broken and in a damaged condition, proceeded to make an examination or survey of the goods, and assessed the damages at $428.00.

Examinations were made from time to time, subsequently, as the packages were opened for sale, and increased damages discovered in the several subsequent examinations, which, by motion in the Court below, the libellants were permitted to incorporate in their libel, and secured the consideration of the Court below.

It is somewhat remarkable that the libellants in this case, on the reception of the goods and the discovery that they were in a damaged condition, made no effort to apprise the steamship company, or their agent, of the fact, nor did they resort to the ordinary common and usual rule, well known and recognized in commercial usage, of calling for a board of survey for the assessment of damages, and an offer of the goods or sale of the damaged goods on account of whom it concerned.

The clerk of the libellants, on examinations made from time to time, assesses the damages, and while we are not disposed to say that the clerk did not act with the greatest impartiality in the assessment of damages made by him, an examination of the testimony, will show that the aggregate of damages was reached, by general assumption, instead of an exhibit of specified facts. This practice, if adopted, would doubtless in a large majority of cases, work great injustice to the opposite party, and while the libellants are not excluded by a disregard of this rule from coming into court, and asserting their right to recover damages, they will be held to the exercise of the greatest diligence as to time, and if they are guilty of *laches* in this particular, they are the parties who must suffer, instead of the respondents.

An examination of the testimony satisfies us, these goods were shipped in good order and condition; that the receipt or memoranda of Nolan & McMahin, the receiving agents at the ship's side, are to be treated and construed as ordinary bills of lading.

As to whether French is to be regarded, at any time, as the agent of the consignees, is not so clear from the testimony. These goods were delivered to him by the steamer, with instructions to demand and receive the freight charges, before he delivered the goods. He was therefore, to this extent if no more, the agent of the ship, and until the goods were accepted by the consignee, either by the payment of freight charges to French, which might be regarded as an acknowledgment of French as their agent in custody of their goods, or an actual delivery of the goods to the consignees, he, French, must be considered

the agent of the ship. In this point of view he might be re-garded, or to a certain extent, as the agent of both libellants and respondents.

An attempt has been made to establish a custom, as to the mode and manner of delivering goods shipped to the port of Olympia. These goods were delivered upon the second or third trip of the steamer to the port of Olympia, which would ex-clude the possibility of any custom which could control or be recognized by this Court.

The vessel arrived at Brown's wharf in the night time, and the goods landed directly from the ship to the wharf, and some of them swung directly from the ship into the warehouse. It does not appear, that on the landing of these goods any oppor-tunity was given to the consignees, to examine the goods, to see whether the obligation imposed by the bill of lading on the ship owner, had been complied with or not. The ship owner is required to deliver the goods within reasonable hours, and con-veyance and delivery are conditions precedent to a demand for freight.

As there is nothing in the testimony to show that French, in the receipt of these goods, was acting as the agent of the con-signees—indeed the contrary appears directly, from the fact that he was directed not to deliver the goods until the freight was paid—he was, therefore, until the payment of the freight and the delivery of the goods, the agent of the ship. There is noth-ing in the testimony going to show that these goods were not received by the ship in good order and condition, but the con-trary appears to the satisfaction of the Court. We therefore think the libellants are entitled to recover.

The only question to be determined is the *quantum* of damages. A majority of this Court think the libellants should be held, by reason of their own *laches*, to the amount of dam-ages as at first assessed by their clerk.

This Court, therefore, directs that a decree be prepared in favor of the libellants for the sum of $428.50, together with costs, and the same be submitted to this Court for approval.